IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LEON SNIPES, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.05-cv-909 WDS |
| C/O WITTHROP, et al. | ) ) ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATIONS

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by Senior United States District Judge William D. Stiehl pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the issue of whether Plaintiff exhausted his administrative remedies with the Illinois Department of Corrections. It is **RECOMMENDED** that the Court **FIND** that Plaintiff has failed to exhaust his administrative remedies, that the action, therefore, be **DISMISSED,** and that the Court adopt the following findings of fact and conclusions of law:

### FINDINGS OF FACT

Plaintiff filed his complaint in this matter on December 27, 2005 (Doc. 1). August 2, 2007, the District Court completed its threshold review of the complaint, finding that Plaintiff stated the following claims for relief:

Count 4: On May 1, 2004, while Plaintiff was on a hunger strike at Menard Correctional Center, Defendant Fritz hurled a juice drink at him, hitting him in the head. Plaintiff refused to drink the juice, and a short time later, six unnamed officers entered his cell, cuffed him, and took him to the shower area and performed a strip search. During the search, Defendants Carter and Witthrop repeatedly struck Plaintiff in the face, chest, abdomen, and back. On these facts, the Court found that Plaintiff stated a claim for unconstitutional use of excessive force.

Count 6: After the May 1 incident, Plaintiff continued his hunger strike. He was confined to

> his cell for a week with no running water. Plaintiff alleged that Defendants Fritz and Liefer were responsible for shutting off and denying him water. The Court found that Plaintiff stated a claim for unconstitutional conditions of confinement.

Count 7: On May 12, 2004, Defendant Witthrop assaulted Plaintiff while removing Plaintiff from his cell during an institutional "drug drop." Plaintiff states that Defendant Witthrop slammed him against the wall, twisted his handcuffs against his wrist bone, then pushed him down against the wall with his knee, cutting Plaintiff's head. Witthrop then repeatedly stepped on his bare feet, smashing his toes with his boots. Another unnamed officer, a member of the Orange Crush Tact Team, rammed him on his right side. The Court found that Plaintiff stated a claim for unconstitutional use of excessive force against Defendant Witthrop.

Count 8: On May 14, 2004, Plaintiff was taken to the medical unit where he was examined by Dr. John Doe, who refused to treat him with any pain medication, despite the "excruciating pain" in his rib cage. The Court found that Plaintiff stated a claim for deliberate indifference to serious medical needs.

Count 9: On May 13, 2004, Defendants Fritz, Helmer, and Esary assaulted Plaintiff by spraying him with liquid that smelled like urine. In light of the other allegations in the complaint, the Court found that Plaintiff had stated a claim for unconstitutional use of excessive force against these Defendants.

After conducting discovery in the matter, on October 15, 2007, Defendants Fritz, Liefer, and Carter filed a motion for summary judgment arguing that Plaintiff had not exhausted his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). In light of the Seventh Circuit's opinion in *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the undersigned held a hearing in the matter on September 15, 2008, after granting the parties 30 days in which to conduct additional discovery on the issue, to determine whether Plaintiff had properly exhausted his administrative remedies. The following recommendations are based upon evidence adduced at that hearing.

At the hearing, Defendants first presented evidence that Plaintiff did not file any timely appeals of denied grievances to the Administrative Review Board ("ARB") (Doc. 25-2, Benton Affidavit October 11, 2007; Hrg. Tr. 12). Defendants argued that had Plaintiff filed any timely

appeals, the ARB would have responded to them, and if he filed any untimely appeals, they would have been returned to him with an indication that they were untimely (Tr. 20). Defendants presented evidence that Plaintiff filed grievances through the institutional level on the events described in Counts 7 and 9 of the complaint, and that an internal affairs investigation was completed regarding the claims in those grievances (Hrg. Exh. 2, Wayne Germain Affidavit; Tr. 37-39). Plaintiff, however, did not appeal the denial of those grievances (Tr. 40-42). Defendants presented evidence that Plaintiff filed grievances regarding other issues not related to the complaint in this action, and he exhausted those grievances through appeal to the ARB (Hrg. Exh. 3, Benton Affidavit September 16, 2008; Tr. 42-43). The exhausted grievances involved Plaintiff's claims of "cruel and unusual punishment" by placement in "box cuffs" for an extended period of time, a challenge to being charged $5.00 for a new ID card, denial of a religious diet, and denial of personal property (Hrg. Exh. 3). Defendants also presented evidence that Plaintiff did not file any grievances at all regarding the claims stated in the other counts of the complaint. A search of Plaintiff's master file, where copies of all grievances filed by Plaintiff are kept regardless of whether they were appealed to the ARB, revealed no grievances filed regarding the other claims in the complaint (Hrg. Exh. 2, Germain Affidavit; Tr. 36-37).

In response, Plaintiff argued first that the Illinois Code provision stating that an inmate "may" appeal the decision of the Chief Administrative Officer ("CAO") does not require him to file an appeal with the ARB to exhaust his grievances (Tr. 10-12). Plaintiff next argued that he was unable to appeal the ARB because the grievances he filed at the institutional level about the claims in his complaint were never returned to him. Finally, Plaintiff argued that historically, Sherry Benton has never ruled in his favor on an appeal of the denial of a grievance (Tr. 13). Plaintiff

testified that he filed grievances regarding all the issues in the complaint at Menard Correctional Center, but that no one at Menard returned the grievances to him after he transferred from Menard to Pontiac in August 2004 so that he could appeal them to the ARB (Tr. 15, 43). Nevertheless, Plaintiff testified that he sent letters to the ARB complaining of the non-return of the grievances (Tr. 26-27). In support of that claim, Plaintiff submits a "Legal Mail Card" from Pontiac Correctional Center, a document upon which the dates of all outgoing and incoming legal mail are recorded (Doc. 28-2, Exh. A). The card indicates two letters were mailed to the ARB on September 7, 2004, and September 20, 2004, and that Plaintiff received two incoming letters from the ARB on November 8, 2004. Next to the notation of the November 8 letters, the card states that "inmate refused to sign for both." (Doc. 28-2, Exh. A). Plaintiff testified that the September 7 letter was a complaint about not receiving grievances back from Menard. He mailed the same letter again on September 20, 2004 (Tr. 26). The Court inquired whether the ARB answered those letters (Tr. 27). Plaintiff responded that they told him to "get something from Menard saying why they wouldn't forward the grievance" (Tr. 27). Plaintiff testified that he "was not in receipt" of any responses from November 8, 2004, despite the notation on the mail card, and that he never refused to sign for any letters from the ARB (Tr. 27-29). Plaintiff stated, "the officers don't feel like giving you your mail in Pontiac, they won't give it to you; they throw it away" (Tr. 29).

The Court then asked Plaintiff how the grievances that were not returned to him differed from the ones he fully exhausted through to the ARB at approximately the same time (Tr. 33). Plaintiff responded that the fully-exhausted grievances were about less egregious conduct, and that the unreturned grievances were ones that showed Menard "in the true light" that it is corrupt and rife with staff misconduct (Tr. 34, 43). Grievances that reveal those things have not been "allowed to

surface" (Tr. 43). Plaintiff then testified that he complained to Mary Hodges, IDOC Chief Investigator, and Deputy Director Ronald Meeks about the unreturned grievances (Tr. 43). He points to the mail card that shows an October 7, 2004, mailing to Mary Hodges, and November 17 and December 20, 2004, mailings to Ronald Meeks (Doc. 28-2, Exh. A).

### CONCLUSIONS OF LAW

The PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*, 182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Illinois Administrative Code sets out the procedure for the filing of grievances by inmates. An inmate must first attempt to resolve the complaint informally. If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. Ill. Admin. Code § 504.810. The grievance officer is required to advise the Chief Administrative Officer at the facility in writing of the findings on the grievance. The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. Ill. Admin. Code § 504.830. An inmate may appeal the decision of the CAO in writing within 30 days. Ill. Admin. Code § 504.850. *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006).

The parties do not dispute that Plaintiff did not file any grievances or appeals with the ARB. Plaintiff makes two arguments in explanation: 1) appeal to the ARB is discretionary by the terms of the Illinois Administrative Code which states that an inmate "may" appeal a decision of the Chief Administrative Officer, and 2) he was prevented from filing appeals with the ARB because the grievances he filed regarding the claims in the complaint were never returned to him.

*Discretionary Review by the ARB*

Plaintiff argues that the terms of the statute clearly indicate that appeal to the ARB is not required to exhaust administrative remedies because the Illinois Administrative Code uses the term "may" in describing an inmate's method of appealing a denied grievance to the Administrative Review Board. This argument is not well taken. The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. The Court in *Pozo* analyzed a Wisconsin Administrative Code provision that provided for review of an untimely appeal. The code stated that a "Corrections Complaint Examiner 'may' accept and decide a belated appeal." The Seventh Circuit held that regardless of whether the examiner did adjudicate the untimely appeal, his "power to do so" was enough to create a required avenue for exhaustion of administrative remedies. *Pozo*, at 1024. Similarly, the Illinois Code provision's use of the word "may" does not make the appeal of the denial of a grievance

discretionary in the face of clear Supreme Court precedent that to exhaust an inmate must "us[e] all steps that the agency holds out." *Woodford*, 548 U.S. at 84. Thus, the undersigned **RECOMMENDS** that Plaintiff's argument on this point be **DENIED**.

*Unavailability of Administrative Remedies*

Plaintiff next argues that his failure to exhaust is not his fault, but that conduct on the part of prison officials prevented him from filing appeals with the ARB. Based upon facts adduced at the hearing, the Court disagrees, as discussed below.

Because failure to exhaust administrative remedies is an affirmative defense, Defendants bear the burden of proving that Plaintiff did not exhaust his administrative remedies. An inmate is required to exhaust only those administrative remedies as are "available" to him. See 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). Because remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba v. Stepp*, 458 F.3d 678, 684 (2006).

Plaintiff and Defendants agree that Plaintiff did not file appeals of any grievances to the ARB. The Defendants thus argue that he did not fully exhaust his administrative remedies. Defendants show that Plaintiff filed grievances regarding two of the claims in the complaint at the institutional level, but he did not appeal them to the ARB. A search of the Plaintiff's master file, in which copies of all grievances are kept, did not reveal any grievances regarding the other claims in the complaint. Further, Defendants show that Plaintiff did fully exhaust through the ARB during the same time period a number of other grievances regarding claims not relevant to this lawsuit.

In support of his position, Plaintiff argues that he did file grievances at the institutional level, but he could not appeal them because they were never returned to him. He provides no evidence of these grievances and he provides no explanation for why they would not appear in his master file, other than an unsupported allegation that Menard officials are trying to cover up staff misconduct. He argues that he sent letters to the ARB complaining about the unreturned grievances, but he does not provide copies of these letters. Instead, he submits a mail card that shows he sent two letters to the ARB on September 4 and 20, 2004. The mail card does not indicate the content of the letters sent to the ARB, which limits the value of the mail card as proof that the letters were about the unreturned grievances. Further undermining the probative value of the mail card is Plaintiff's insistence that he did not receive any letters from the ARB, despite the indication on the card that he received two letters from the ARB on November 8, 2004, for which he refused to sign.

Defendants' evidence that Plaintiff fully exhausted other grievances during the same time period, further weakens Plaintiff's argument. The only explanation Plaintiff gives for why staff at Menard would forward some of the grievances and not others is Plaintiff's belief that Menard officials have conspired to hide misconduct. The Court agrees with Defendants that if the Illinois Department of Corrections were conspiring to cover up staff misconduct, it would not maintain other grievances–some of which involve staff misconduct and use of force–in Plaintiff's master file. The Court simply does not believe Plaintiff's unsupported allegations of a concerted effort to prevent him from filing or appealing grievances. The Court also notes that Plaintiff's argument that Sherry Benton has never ruled in his favor on the appeal of a grievance is unsustainable. The Illinois Supreme Court has refused to consider this argument as an exception to the Illinois Code provisions requiring exhaustion. *Beahringer v. Page*, 789 N.E.2d 1216, 1226 (Ill. 2003) ("the fact that there

are clear indications that the agency may or will rule adversely is generally inadequate to . . . avoid the exhaustion requirement").

Therefore, based on the foregoing, the Court believes that Plaintiff caused the unavailability of remedies by forfeiting his opportunity to file or appeal grievances on the issues in this case. Accordingly, the undersigned **RECOMMENDS** that the Court **FIND** Plaintiff failed to exhaust available administrative remedies prior to filing suit, as he is required to do under 42 U.S.C. § 1997e(a).

## CONCLUSION

For the reasons set forth above, it is hereby **RECOMMENDED** that the Court **FIND** that Plaintiff failed to exhausted his administrative remedies, that the action be **DISMISSED**, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1, the parties shall have ten (10) days after the service of this Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge these Recommendations before either the District Court or the Court of Appeals. Snyder v. Nolen, 380 F.3d 279, 284 (7th Cir. 2004); United States v. Hernandez-Rivas, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: March 4, 2009**

s/ *Donald G. Wilkerson*<br>
**DONALD G. WILKERSON**<br>
**United States Magistrate Judge**